**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA A. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:20-cv-00773 |
| | ) |
| FAMILY DOLLAR STORES and | ) |
| CARNEGIE BOROUGH POLICE | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

<u>**OPINION**</u>

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Plaintiff Patricia Scott's *pro se* Motion for Injunctive Relief (ECF No. 10) brought against Defendants Family Dollar Stores ("Family Dollar") and the Carnegie Borough Police Department (the "Carnegie Police"). Because Ms. Scott has yet to properly serve Defendants as required by Federal Rule of Civil Procedure 4, Family Dollar and the Carnegie Police have not been formally put on notice as to this action or the current motion. The Court therefore treats Ms. Scott's Motion for Injunctive Relief as an *ex parte* application for a temporary restraining order ("TRO") pursuant to Federal Rule of Civil Procedure 65(b).

In addition to assessing Ms. Scott's application for a TRO, the Court is obligated to assess *sua sponte* whether the claims as alleged in Ms. Scott's Complaint are (1) properly before this Court, *see Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001) "[A court is] required to raise issues of standing *sua sponte* if such issues exist."); and (2) in light of Ms. Scott's *in forma pauperis* status, whether her Complaint states a claim upon which relief can be granted as mandated by 28 U.S.C. § 1915(e)(2)(B)(ii).

1

In her Complaint, Ms. Scott seeks statutory and compensatory damages, as well as injunctive relief under Title III of the Americans with Disabilities Act ("ADA"), which prohibits public accommodations like Family Dollar from discriminating against individuals on the basis of a covered disability. Likewise, in her TRO application, Ms. Scott seeks injunctive relief and damages for "emotional distress" against Family Dollar.[1] (ECF No. 10.)

First, Title III of the ADA does not permit claims for damages, so the Court will dismiss Ms. Scott's requests for statutory and compensatory damages, as alleged in her Complaint, with prejudice. Second, neither Ms. Scott's Complaint nor her TRO application sufficiently plead an injury in fact, which is a necessary element of Article III standing and is a necessary component of demonstrating a likelihood of success on the merits, a prerequisite to obtaining a TRO. As such, the Court will deny Ms. Scott's TRO application, and further, will dismiss Ms. Scott's Complaint as to her claim for injunctive relief without prejudice but with leave to amend. In summary, Ms. Scott's application for a TRO (ECF No. 10) is **DENIED**. The Court further orders that Ms. Scott's Complaint (ECF No. 4), to the extent it seeks injunctive relief, is **DISMISSED WITHOUT PREJUDICE** and with leave to amend. Finally, to the extent the Complaint seeks statutory or monetary damages, it is **DISMISSED WITH PREJUDICE**.

---

[1] Although Ms. Scott names the Carnegie Police as a Defendant in her TRO application as well as the Complaint, she does not request any form of relief as to the Carnegie Police nor does she proffer any fact-based allegation in her TRO application or Complaint that the Carnegie Police engaged in any way that was discriminatory of Ms. Scott's claimed disability. Rather, the TRO request and Complaint's Title III assertion as to the Carnegie Police appears to be entirely derivative of its assertions as to Family Dollar. The Court therefore denies Ms. Scott's application for a TRO as to Defendant Carnegie Police and will analyze her request for a TRO only as it pertains to Family Dollar. Further, the Court dismisses the Complaint against the Carnegie Police in full for failure to state a claim upon which relief can be granted against this Defendant. *See Scott v. Giant Eagle Market*, No. 17-00289, 2018 WL 1157993, at *5 n.4 (W.D. Pa. Mar. 2, 2018) (dismissing Ms. Scott's claims against the City of Pittsburgh Police on the same grounds in a previous action before this Court).

## I.     <u>BACKGROUND</u>

The following facts are drawn from Ms. Scott's Complaint and application for a TRO. Ms. Scott, proceeding *pro se*, filed a Complaint (ECF No. 4) alleging Title III ADA violations at a Family Dollar in Carnegie, Pennsylvania, based on two (2) visits to the store, one of which allegedly resulted in Ms. Scott calling the Carnegie Police. (ECF No. 10, at 2.) Ms. Scott also includes the Carnegie Police as a named Defendant in this action for allegedly violating her rights under the ADA, but does not allege any specific unlawful conduct by that agency. (ECF No. 4, at 3.)

Ms. Scott avers that in October 2019, she entered the Family Dollar Store located at 300 Broadway Street in Carnegie, Pennsylvania. (*Id.* at 1). After shopping, Ms. Scott waited in line to check out. (*Id.*) When it was Ms. Scott's turn to purchase her food items at the counter, Ms. Scott alleges that she "request[ed] the cashier to assist her on the lower [ADA] counters . . . to accommodate her disability." (*Id.*) The cashier paged the store manager to "open the second ADA cash register" to assist her. (*Id.*) Ms. Scott next alleges that the store manager "verbally attack[ed] her] by wrongly accusing her of holding up" the line. (*Id.*). In sum, Ms. Scott maintains that the store manager refused to open the lower counter register; refused to allow the other working store cashier to assist her at that lower counter; and demanded that Ms. Scott use the debit card machine at the available cash register "like all of the other customers." (*Id.*) Ms. Scott contends, however, that due to her disability (wheelchair confinement), she was unable to reach the higher casher register and was thus unable to purchase her food. (*Id.* at 2.)

On May 2, 2020, Ms. Scott returned to the Family Dollar. (*Id.* at 3.) During this visit, Ms. Scott alleges that she "had to wait for a cashier to open the heavy door" to enter the store. (*Id.*) Once inside, she contends that she "made a request for the cashier to assist her with reaching an

item on the top shelves," but the store manager allegedly refused. (*Id*.) At that point in time, she called 9-1-1, and the Carnegie Police then allegedly forced Ms. Scott to leave the store without purchasing her items. (*Id*.) Based on these interactions, Ms. Scott asserts that the Family Dollar and the Carnegie Police violated her rights under Title III of the ADA. (*Id*.)

## II.   LEGAL STANDARD

### A.   *Pro Se* Litigants

*Pro se* pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). If the court can reasonably read the pleadings to state a valid claim on which the litigant could prevail, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). Accordingly, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir. 1997), *overruled on other grounds by Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001). Because Ms. Scott is a *pro se* litigant, this Court will consider the pleadings in that vein.

### B.   *In Forma Pauperis* Litigants

Because Ms. Scott proceeds in this action *in forma pauperis* (IFP), the Court is obligated to screen her Complaint under 28 U.S.C. § 1915. Under § 1915(e), the Court must dismiss any IFP complaint if it facially fails to state a claim, is frivolous or malicious, or seeks damages against an

immune defendant.[2] *See id.* § 1915(e). While the statute only refers to suits brought by prisoners, courts are mandated to apply § 1915(e)'s screening procedure to non-prisoner IFP applications as well. *Sowemimo v. Thomas*, No. 09-00639, 2009 WL 3806737, at *2 (W.D. Pa. Nov. 13, 2009) ("In performing a court's mandated function of *sua sponte* reviewing complaints under 28 U.S.C. § 1915(e)[, the court must] determine if [the litigants] fail to state a claim upon which relief can be granted."); *see, e.g.*, *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270 (10th Cir. 2013). In performing its § 1915(e) screening function, a district court should employ the same standard used for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 537 (W.D. Pa. 2013).

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court's decision in *Ashcroft v. Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, under Rule 12(b)(6), the plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

Our Court of Appeals has broken the *Iqbal* and *Twombly* pleading standard into a three-part framework. First, the Court "identif[ies] the elements of the claim." *Malleus v. George*, 641

---

[2] 28 U.S.C. § 1915(e) provides:
> (1) The court may request an attorney to represent any person unable to afford counsel.
> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal—
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

F.3d 560, 563 (3d Cir. 2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id.* Third, the Court "look[s] at the well-pleaded components of the complaint and evaluat[es] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* Along the same lines, the Third Circuit has held that the complaint must "show" that the plaintiff is entitled to relief based on the facts that the Court must presume as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

### III.    DISCUSSION

The Court first reviews Ms. Scott's application for a TRO and concludes that Ms. Scott's TRO request fails to demonstrate that her underlying ADA claim has a likelihood of success on the merits; fails to allege irreparable harm; and fails to comply with the necessary requirements of Federal Rule of Civil Procedure 65(b). Second, the Court screens Ms. Scott's Complaint *sua sponte* (1) to ascertain its jurisdiction to hear the case pursuant to Article III of the Constitution and (2) to determine "if [the Complaint] fail[s] to state a claim upon which relief can be granted," pursuant to its obligation under 28 U.S.C.§ 1915. The Court concludes that Ms. Scott has failed to allege standing to bring her injunctive relief claim; however, the Court further concludes that amendment of her Complaint would not necessarily be futile. Accordingly, the Court dismisses her Complaint as to her injunctive relief claims without prejudice and with leave to amend.

### A.  Ms. Scott's Application for a Temporary Restraining Order

When a party moves for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b), a court will apply the same legal standard as it would for a preliminary injunction motion. *See Trefelner v. Burrell School Dist.*, 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009) (citing *Messner v. Bunner*, No. 07-00112, 2009 WL 1406986, at *2 (W.D. Pa. May 19, 2009)). To prevail on a motion for injunctive relief, as sought here by Ms. Scott, a moving party must demonstrate

that "(A) they are likely to succeed on the merits of their claims, (B) they are likely to suffer irreparable harm without relief, (C) the balance of harms favors them, and (D) relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, No. 16-3528, 2017 WL 393164, at *6 (3d Cir. Jan. 30, 2017). In evaluating whether the party seeking an injunction is likely to succeed on the merits, courts do "not require that the right to a final decision after trial be wholly without doubt; the movant need only show a reasonable probability of success." *Id.* (internal quotation marks omitted); *see also See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 21 (2008); *ADP, LLC v. Jordan Lynch*, No. 16-3617, 2017 WL 496089, at *2 (3d Cir. Feb. 7, 2017). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* And "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* In addition to demonstrating the four factors outlined above, to obtain a TRO by way of an *ex parte* motion, a moving party must certify "in writing any efforts made to give notice [to the nonmoving party] and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Here, the key issue before the Court is whether there is a reasonable likelihood that Ms. Scott would prevail on her ADA claim against Defendants. For the reasons that follow, the Court concludes that Ms. Scott has not made a sufficient showing of her likelihood of success on the merits and thus her application for a TRO is denied. Ms. Scott has failed to allege "a likelihood of success on the merits" against Family Dollar because she has failed to demonstrate her standing, which is required "to bring this litigation" in the first place. *See Frotton v. Barkan*, 236 F. Supp. 2d 92, 98 (D. Mass. 2002) (in a similar ADA action dealing with wheelchair access at a store, the

court concluded that the plaintiffs had not "proven [ ]likelihood of success on the merits," the first

prong of TRO analysis, because the plaintiffs failed to establish "standing," *i.e.*, injury in fact).

Here, under the four-factor test laid out in *Anderson v. Macy's Inc.*—a case in which this

Court analyzed whether a plaintiff had shown the requisite injury in fact to bring claims for

prospective injunctive relief under the ADA—Ms. Scott most notably does not indicate any

definitive intent to return to Family Dollar in her TRO application. *Anderson v. Macy's Inc.*, 943

F. Supp. 2d 531 (W.D. Pa. 2013) (explaining that to show injury-in-fact, the plaintiff must show

(1) proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage

of the public accommodation; (3) definitiveness of the plaintiff's plan to return; and (4) the

plaintiff's frequency of nearby travel). Demonstrating an intent to return to a public

accommodation is an important component of showing an injury in fact required for prospective

injunctive relief under the ADA. *See Scott v, Citizens Bank*, No. 18-00600, 2020 WL 2744105, at

*4 (W.D. Pa. May 27, 2020) (emphasizing the importance of standing factor three (3)). In the

Court's estimation of Ms. Scott's TRO application, Ms. Scott offers no affirmative statements or

facts to suggest any such intention. (ECF No. 10.) Additionally, Ms. Scott has not alleged that she

will suffer any "irreparable harm without relief,"[3] although it is not necessary for the Court, having

already concluded that Ms. Scott has not established a likelihood of success on the merits, to

analyze Ms. Scott's TRO application under the remaining three (3) TRO prongs. *See Murray v.*

---

[3] In the "Pray[er] for Relief" section of her TRO application, Ms. Scott states that in addition to "injunctive relief," she also seeks "emotional distress" damages. (ECF No. 10, at 3.) Injunctive relief is an equitable remedy that is only available when a remedy at law, *i.e.*, monetary damages, would not adequately remedy the plaintiff's harm. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992); *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102–03 (3d Cir. 1988). Although Title III of the ADA does not permit claims for damages, the Court notes that Ms. Scott's assertion that she seeks emotional distress damages undermines her assertion "that equitable relief is necessary" and that a remedy at law would be inadequate. *Cerciello v. Sebelius*, No. 13-03249, 2016 WL 792505, at *6 (E.D. Pa. Mar. 1, 2016) (citing *Simpler Consulting, Inc. v. Wall*, No. 05-00452, 2008 WL 763746, at *5 (W.D. Pa. 2008)).

*Philadelphia*, ___ F. Supp. 3d. ___, 2020 WL 5006046 (E.D. Pa. Aug. 25, 2020) (citing *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018), *cert. denied* 139 S. Ct. 440 (2018)) ("[G]iven that [the p]laintiffs have not satisfied the first step of the test for granting a preliminary injunction, the [c]ourt need not reach the [other prongs].").

Finally, the Court notes that Ms. Scott's application for a TRO does not indicate any efforts that have been made by her to give notice to Defendants or proffered reasons as to why Ms. Scott should not be required to do so pursuant to Federal Rule of Civil Procedure 65(b)(1). Failure to comply with the requirements of Federal Rule of Civil Procedure 65 is grounds alone to deny Ms. Scott's TRO request. Accordingly, Ms. Scott's application for a TRO is denied.

### B. Ms. Scott's Complaint

#### 1. Standing

Even applying a liberal *pro se* pleading standard, Ms. Scott's Complaint does not make out the required elements of standing. Accordingly, the Court *sua sponte* dismisses without prejudice Ms. Scott's Complaint seeking prospective injunctive relief for want of jurisdiction.

Every case that comes before an Article III court must present a live case or controversy. *See* U.S. Const. art. III, § 2. To implement the Constitution's case or controversy requirement, federal courts employ the doctrine of standing, which essentially asks whether "this plaintiff can assert these claims" consistent with the limited jurisdiction provided by Article III. *See, e.g.*, *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution."). To ensure "proper adversarial presentation" of the case, the plaintiff bears the burden of demonstrating her standing. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"Because the remedy for a private ADA Title III violation is [prospective] injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations." *Anderson*, 943 F. Supp. 2d at 538. A plaintiff, therefore, must demonstrate a real and immediate threat of future injury in order to satisfy the standing doctrine's "injury in fact" requirement. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103–04 (1983). Simply alleging "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

When the Court evaluates whether a plaintiff's Title III ADA claim against a public accommodation alleges an "injury in fact," it appropriately considers four (4) factors—not all of which must be present in every case, and none of which is alone dispositive. *See Anderson*, 943 F. Supp. 2d at 539 (citing *Harty v. Burlington Coat Factory of Pa., L.L.C.*, No. 11-01923, 2011 WL 2415169, at *4 (E.D. Pa. June 16, 2011)). First, the Court should consider the plaintiff's proximity to the defendant's place of public accommodation. *Id.* Second, the plaintiff's past patronage of the public accommodation. *Id.* Third, the definitiveness of the plaintiff's plan to return. *Id.* And, finally, the plaintiff's frequency of nearby travel. *Id.*

Here, the Court concludes that Ms. Scott's Complaint alleges facts that go to the first, second, and fourth *Anderson* factors. Namely, the Family Dollar is located in Carnegie, Pennsylvania, which is located only 1.5 miles from Heidelberg, PA where the Ms. Scott resides, speaking to standing factor one (1). In *Anderson*, the Court held that it "might presume at the *pro se* pleading stage that [the plaintiff] travels frequently [factor 4] in the area" when the plaintiff was only less than five (5) miles away from store at issue. *Id.* at 5. Here, Ms. Scott lives less than five (5) miles away from Family Dollar, so the Court may presume the existence of standing factor

four (4). Finally, Ms. Scott's Complaint alleges that she visited the Family dollar store twice in the past, which goes to standing factor two (2). As for factor three (3), however, Ms. Scott's Complaint is devoid of any facts that indicate a definitive intent to return to the Family Dollar in Carnegie, Pennsylvania. Moreover, Ms. Scott, having only visited the store location on two (2) occasions over the course of seven (7) months, does not from that demonstrate that she intends to return, without a more clear affirmative and detailed statement of such a specific intention to return. *See Scott v. Citizens Bank*, No. 18-00600, 2020 WL 6322826, at * (W.D. Pa. Oct. 28, 2020) (concluding that, even liberally construing the plaintiff's complaint, "a statement of definitive intent to return under the third standing factor outlined in *Anderson* cannot plausibly be inferred from Ms. Scott's broad statement that she 'kept her distance'"); *Scott v, Citizens Bank*, No. 18-00600, 2020 WL 2744105, at *4 (W.D. Pa. May 27, 2020) (discussing the importance of standing factor three (3) in the Court's decision in *Anderson*).

The Court concludes that Ms. Scott has failed to sufficiently allege the injury in fact required to bring an injunctive relief claim pursuant to Title III of the ADA against Family Dollar. The Court also concludes, however, that at this early stage of litigation, amendment may not be futile, which is further supported by its additional analysis in the next section. Accordingly, Ms. Scott, should she choose to file an Amended Complaint, is directed to clearly and specifically allege facts that speak to the four-factor *Anderson* test as outlined by the Court. For now, however, the Court dismisses her Complaint without prejudice for want of subject matter jurisdiction.

## 2.  "Failure to State a Claim" Pursuant to 28 U.S.C.§ 1915(e)(2)(B)(ii)

Because the Court dismisses Ms. Scott's Complaint on standing grounds, it is not necessary that the Court further engage in its screening function under 28 U.S.C.§ 1915(e) at this early stage of litigation. Nonetheless, the Court engages this analysis to demonstrate that amendment of Ms.

Scott's Complaint would not be futile. To establish a failure to accommodate under the ADA, a plaintiff must demonstrate that (1) she is disabled; (2) the defendant is a "public accommodation" under Title III of the ADA; and (3) that the defendant unlawfully discriminated against her on the basis of her disability by (a) failing to make a reasonable modification that was (b) necessary to accommodate her disability. *See Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019).

First, taking the Complaint's allegations as true, as the Court must here, the Court concludes that Ms. Scott has plausibly alleged that she is "disabled" within the meaning of the ADA. Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such an individual[.]" 42 U.S.C. § 12102(1). A "major life activity" is further defined to include "walking, standing, lifting, bending," etc. Here, Ms. Scott, at various times throughout her Complaint, indicates that she is confined to a wheelchair and identifies as disabled. Based on these allegations and reasonable inferences that the Court may draw, Ms. Scott has sufficiently stated facts that plausibly allege she is disabled.

Second, liberally construing the Complaint to account for Ms. Scott's *pro se* status, the Court concludes that Ms. Scott has sufficiently alleged that Family Dollar is a "public accommodation" by stating she purchases food items within the store, which is likely viewed as akin to a grocery store under 42 U.S.C. § 12812 and subsequent guidance from 28 CFR § 36.104. According to 28 CFR § 36.104, "a facility operated by a private entity whose operation affect commerce" and that which could be defined as a "grocery store . . ., or other sales . . . establishment" constitutes a public accommodation under the ADA.

Third, Plaintiff has alleged facts on the face of her Complaint that are sufficient to plausibly allege that Family Dollar discriminated against her on the basis of her wheelchair confinement by (a) failing to make a reasonable modification that was (b) necessary to accommodate her disability.

12

*See Matheis*, 936 F.3d at 175. According to 28 CFR § 36.302, "a store with check-out aisles shall ensure that an adequate number of accessible check-out aisles are kept open during store hours, or shall otherwise modify its policies and practices, in order to ensure that an equivalent level of convenient service is provided to individuals with disabilities as is provided to others." Moreover, the Third Circuit, in a nonprecedential opinion, has held that if a grocery store's counter is too high, but accessible to wheelchair users from the side, it does not violate the ADA (at the motion for summary judgment stage), which could inferentially suggest that failure to sufficiently provide access to a check-out aisle by a wheelchair-confined individual could give rise  discrimination under the ADA. *See, e.g.*, *Douris v. Genuardi's Family Markets, Inc.*, 132 Fed. App'x 425, 427 (3d Cir. 2005).

Here, Ms. Scott alleges that although Family Dollar did have lower counters available for disabled customers in wheelchairs, the store manager refused to make them available to her. (ECF No. 4, at 2.) Ms. Scott asserts that the store manager instead told her that she should "reach a high[er] debit card machine to slide her card like all the other customers." (*Id*.) Ms. Scott contends that use of the lower counter was necessary to accommodate her disability because she is "confined to a wheelchair," and "is physical[ly] unable to reach the high machine[.]" (*Id*.) Taking these facts alleged as true and based on Ms. Scott's statements that she was unable to reach the "higher debit card machines" due to her claimed disability, (*id*.), it appears to the Court that Ms. Scott has sufficiently stated a claim under this third requirement by showing that Family Dollar discriminated by (1) failing to open a lower-counter check-out aisle, which was (2) reasonably necessary to accommodate Ms. Scott's disability (her wheelchair confinement).

As such, Ms. Scott has not failed to state a claim upon which relief can be granted, supporting the Court's conclusion that amendment so as to allege standing would not necessarily

be futile. *See Shane v. Fauver*, 213 F.3d 113, 115–16 (3d Cir. 2000) (explaining that "dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility").

### IV.   **CONCLUSION**

While courts have a duty to liberally construe *pro se* filings, Ms. Scott's Complaint and her application for a TRO do not meet the mark. Here, the Court may not exercise jurisdiction over a case that lacks standing to be in federal court in the first place. Accordingly, Ms. Scott's Motion for Injunctive Relief, which the Court treats as an application for a TRO (ECF No. 10), is **DENIED**. Second, Ms. Scott's Complaint (ECF No. 4) is **DISMISSED WITHOUT PREJUDICE** as to any prospective injunctive relief. The Court, however, affords Ms. Scott the opportunity to file an Amended Complaint to demonstrate injury in fact in accordance with the four (4) *Anderson*-standing factors. Third and finally, Ms. Scott's Complaint is **DISMISSED WITH PREJUDICE** as to any monetary damages claims under Title III of the ADA. Ms. Scott is permitted to file an Amended Complaint including only an injunctive relief claim within thirty (30) days of the date of this Opinion and accompanying Order. The case will be closed on the docket without prejudice pending the timely filing of any Amended Complaint.

 s/ Mark R. Hornak

Mark R. Hornak
Chief United States District Judge

Dated: December 11, 2020

cc:    All counsel of record
       Patricia Scott, *pro se* (by U.S. Mail)

14